SOUTHERN SURETY COMPANY, Appellant, v. YORK TIRE SERVICE et al., Appellees.

No. 39803.

November 21, 1929.

*J. E. Jordan* and *Mears, Lovejoy, Jensen & Gwynne,* for appellant.

*McCoy & Beecher* and *Sullivan & Sullivan,* for appellees.

Albert, C. J.—One Walter M. Blowers was the owner in fee of Lot 5 in Block 39 in the original plat of East Waterloo, east of the Cedar River in the city of Waterloo, Black Hawk County, Iowa. On February 8, 1921, he, with his wife, entered into a contract of lease with O. F. Teeter, leasing said property for a term of 20 years from and after March 1, 1921. This lease provided, among other things, that the lessee agreed to erect a building on said premises within six months from the date of the lease, in accordance with the building and other ordinances of the city of Waterloo, and that the lessee should have a right to remove said building or buildings from said premises at the expiration of the lease, and should remove the same if notified by the owner or landlord so to do. The lease further provided that the tenant might sell or assign the lease, with all rights thereunder, provided said lease or assignment should be in writing, duly acknowledged and recorded, and provided further that said sale or assignment "shall not relieve or release the assignor thereof from any obligations, covenants, etc., herein contained, which shall or may accrue and become a cause of action in favor of the landlord hereunder."

On the 4th day of February, 1921, O. F. Teeter and N. W. Frisbie entered into a lease contract with W. W. York, in which

they leased said property to York for a term of 20 years. This lease contract provided that the lessees would erect a building on said property, to cost not more than $15,000, and at the end of the term, the buildings upon said premises would either be purchased by the first parties or the second party would remove the same immediately following the expiration of the lease.

On the 31st day of May, 1921, York entered into a written contract with Register & Buxton, providing for the erection of a building on the lot in controversy according to certain drawings and specifications, and thereafter, these contractors proceeded to carry out the contract. They started excavation for the basement, and procured the material necessary for the erection of said building; but, after they had worked for some time thereon, York breached his contract, by failure to make payments to the contractors in accordance with the terms of the contract, and they ceased work thereon. York then went into bankruptcy. Register & Buxton filed a mechanic's lien, claiming an amount due them in the sum of $1,227.83, alleging that Blowers was the owner of the property; and later, they sought to foreclose this mechanic's lien against the lot owned by Blowers. They first sued at law, asking judgment for the amount due them, then amended their petition, and asked a foreclosure of the lien. To fully understand this situation, it may be further said that, under the contract, York was to pay for the material and labor, and the contractors were to receive as compensation a sum equal to 8 per cent of the cost thereof, and $1.00 per hour for the services of one member of the contracting firm for supervising the work; also pay for all drayage charges and liability insurance.

The first question raised here involves the question of waiver and estoppel. It appears from the record that Register & Buxton brought an action at law on the same account against the  York Tire Service Company and W. W. York, and obtained a judgment in the sum of $1,127.80. This proceeding was aided by an attachment against the defendants in that action, special execution was issued therein, and certain property sold; but the amount realized was small, and did not satisfy the judgment thus obtained. In this action it is sought to foreclose a mechanic's lien against the York Tire Service Company, W. W. York, and Walter M. Blowers, the title holder of the land. It is the claim

of the defendants that, because the action was brought at law, aided by attachment and the sale of the property under special execution, the mechanic's lien was waived, or that the plaintiff is estopped from claiming any rights under the mechanic's lien. No authorities are cited to support this contention, nor have we been able to find any so holding. The authorities we do find hold exactly to the contrary. In other words, it is held that the bringing of a personal action on a claim or account, aided by an attachment, is not a waiver of the lien. 40 Corpus Juris 317; 18 Ruling Case Law 980, Section 122; 3 Ann. Cas. 1098. The notes to the above citation set out many cases supporting the doctrine here announced. This contention of the appellees' is not sustained by principle or authority.

It is next claimed that the court erred in holding that the real estate in controversy was not subject to this mechanic's lien. It will be noted from the above statement that, under the terms  of the original lease, whatever improvements were put upon this place by the lessee, Teeter, were to be removed at the expiration of the lease. This is the distinguishing feature between the case at bar and the case of *Queal Lbr. Co. v. Lipman*, 200 Iowa 1376. Reliance is also placed on the case of *Janes v. Osborne*, 108 Iowa 409; but in that case there was no agreement that the improvements were to be removed at the expiration of the lease.

We have lately had occasion to review a very similar situation in the case of *Lane-Moore Lbr. Co. v. Kloppenburg*, 204 Iowa 613. We there discussed Section 10270, Code of 1924, as to the meaning of the term "owner." We there said:

" ' * * * a mechanic's lien on the estate or property of a lessor cannot be predicated on his mere knowledge that improvements are being made by the lessee, or on his knowledge and acquiescence, permission, or failure to object.' "

After discussing certain particular cases therein set out, we further said:

"Generally speaking, the subjects discussed there relate to situations where a vendor sold real property to a vendee under the agreement to make improvements; a lessor leased with the

understanding that the lessee should construct buildings which should remain at the end of the term, and the landlord thereby become the benefactor * * *. Presented for review now is a simple arrangement whereby a landlord, in a lease with his tenant, permits the latter to remove any betterments or buildings placed thereon by him (the tenant).''

We then cite *Oregon Lbr. Co. v. Beckleen,* 130 Iowa 42, and quote therefrom as follows:

''Here, the permission to O'Neal to build was on condition that he might remove the building, and was not based on any benefit to the landowner. It was a mere consent for the supposed advantage of the tenant, without thought of gain to the landlord. To charge the land in such a case would be equivalent to saying that a landowner may not consent to the erection of an improvement on the leased premises without rendering them liable to the payment of the cost incurred. Such, of course, is not the law.''

In line with these decisions is the case of *Ellis v. Simpson,* 199 Iowa 671.

It is quite well settled in this state that, before a lien can be maintained, there must be a contract, either express or implied, with the owner. *Hoag & Griffith v. Hay,* 103 Iowa 291; *Des Moines Sav. Bank v. Goode,* 106 Iowa 568; *Queal Lbr. Co. v. Lipman,* supra.

There is no claim here that there was any contract between Register & Buxton and Blowers, the owner of the land; and if there be a liability here, it is because of the statutory definition of the word ''owner.'' The first subdivision of Section 10270, Code of 1927, provides that:

'' 'Owner' shall include every person for whose use or benefit any building, erection, or other improvement is made.''

The question, therefore, narrows itself to whether or not this building was to be erected on this property for the benefit of Blowers. It is foregone, of course, that it was not for the ''use'' of Blowers. The contract, as stated, provides that, at the expiration of the lease, the lessee was to remove the building. Under these circumstances, it cannot be said that the building was

for the benefit of Blowers. More than this, the fact situation in the case shows that there was in fact no building erected on the property that could, in any way, inure to the benefit of Blowers, even though the contract were other than it is. It must follow necessarily, therefore, that Register & Buxton were not entitled to have this mechanic's lien foreclosed as against the real estate owned by Blowers. This is in accordance with the finding of the district court; and while many other questions are discussed, this being sufficient to sustain the ruling of the district court, the other questions will not be discussed.—*Affirmed.*

EVANS, FAVILLE, DE GRAFF, and KINDIG, JJ., concur.