**RINGLAND–JOHNSON–CROWLEY COMPANY, Appellant,**

v.

**FIRST CENTRAL SERVICE CORP., Appellee.**

No. 58385.

Supreme Court of Iowa.

June 29, 1977.

Gary S. Gill, Swift, Brown & Winick, Des Moines, for appellant.

Lindgren, Davis & Baker, Des Moines, for appellee.

Heard before MOORE, C. J., and MASON, RAWLINGS, REES and REYNOLDSON, JJ.

MASON, Justice.

Plaintiff, Ringland-Johnson-Crowley Company, commenced an action in the Polk District Court seeking to recover $143,-038.17 from KSDL, Inc., and First Central Service Corporation for labor and material furnished by plaintiff in the renovation of a building in which KSDL and First Central held interests. In addition, plaintiff sought to establish and enforce a mechanic's lien

filed by it with respect to the renovated property against KSDL, First Central and various other holders of interests in the subject property. Various pretrial motions and orders resulted in plaintiff proceeding to trial against only KSDL and First Central.

Following trial to the court, plaintiff was awarded a judgment against KSDL in the amount of $143,038.17 plus interest and costs. Plaintiff's claim against First Central, based upon the mechanic's lien, was dismissed. Plaintiff appeals from that portion of the judgment dismissing its claim for relief against First Central.

In 1922 the trustees of the Frederick M. Hubbell Trust, titleholder of the subject property, leased the premises to Commonwealth Company, said lease terminating in 2019. Subsequently, Commonwealth erected the Paramount Theater Building on the site.

Some time in early 1973 First Central purchased the stock of Commonwealth and arranged to lease Commonwealth's only asset, the Paramount Building, for a term of years not established by the record herein. The lease was not reduced to writing until June 1, 1973; however, for some time prior to that date the parties operated according to an oral arrangement.

On March 1, 1973, KSDL leased the subject property from First Central for ten years with an option to renew for five additional years. In addition, KSDL was given an option to purchase the premises. Additional provisions of the lengthy lease agreement will be discussed if and as they become pertinent to a resolution of the issue presented by this appeal.

Plaintiff and KSDL entered into a contract dated March 7, the terms of which provided plaintiff would perform the work necessary to convert the theater portion of the subject property into a dinner theater and would be compensated therefor on a "cost of the work plus a fee" basis. The renovation of the theater consisted primarily of converting the typical sloping audience area into a terraced arrangement. The work was completed April 17. Between that date and May 13, plaintiff submitted to KSDL for payment three bills totaling $143,038.17. As of the time of trial plaintiff had received no payments from KSDL.

Plaintiff's petition, filed June 6, named as defendants KSDL, First Central, the Hubbell trustees and two additional entities connected with the dinner theater project. Prior to trial the Hubbell trustees were granted summary judgment and plaintiff dismissed its action with respect to all other named defendants other than KSDL and First Central.

KSDL did not appear to defend and plaintiff was accordingly granted a default judgment against KSDL in the amount prayed for in the petition. The trial court, however, dismissed plaintiff's claim against First Central finding and concluding as follows:

"  *    *    *

"5. First Central  *   *   * was not a party to the contract for remodeling the premises. The lease between the tenant [KSDL] and owner [First Central] contained no provision requiring remodeling of the premises. There was no evidence to establish a joint venture between the owner and lessee. The evidence fails to show that the work performed by the plaintiff improved or enhanced the value of the building so as to benefit the owner.

"  *    *    *

"The plaintiff had the burden of proving by a preponderance of the evidence that the defendant First Central  *   *   * was either directly or indirectly a party to the contract  *   *   *, or that KSDL  *   *   * was acting as an agent for First Central  *   *   * or that the alterations and remodeling so enhanced the value of the premises as to result in an unjust gain or substantial benefit to the defendant. The Court, after considering the entire record, concludes that plaintiff has failed to sustain this burden of proof."

On this appeal, plaintiff contends the trial court's dismissal of its action against First Central was erroneous.

The only question presented herein may be succinctly stated as follows: Under the facts and circumstances present herein has First Central's conduct resulted in its interest in the subject property being subjected to plaintiff's mechanic's lien?

■ I. An action to enforce a mechanic's lien is in equity. Section 572.26, The Code; *Landas Fertilizer Company v. Hargreaves*, 206 N.W.2d 675, 676 (Iowa 1973). Consequently, this court's review is de novo. Rule 334, Rules of Civil Procedure. It is our responsibility to review the whole record and determine from the credible evidence rights anew on those propositions properly presented, provided issue has been raised and error, if any, preserved in the course of trial proceedings. While weight will be given to findings of the trial court, this court will not abdicate its function as triers de novo on appeal. *Basic Chemicals, Inc. v. Benson*, 251 N.W.2d 220, 225–226 (Iowa 1977).

Section 572.1(1), The Code, states, " 'Owner' shall include every person for whose use or benefit any building, erection, or other improvement is made, having the capacity to contract, including guardians."

Section 572.2, The Code, provides in part as follows:

"Every person who shall furnish any material or labor for, or perform any labor upon, any building or land for improvement, alteration, or repair thereof, including those engaged in the construction or repair of any work of internal or external improvement, * * *, by virtue of any contract with the owner, his agent, trustee, contractor, or subcontractor shall have a lien upon such building or improvement, and land belonging to the owner on which the same is situated * * *, to secure payment for material or labor furnished or labor performed."

The question whether a mechanic's lien, which arises as a result of the activities of a lessee, attaches to the lessor's interest in the property has been confronted by this court on a number of occasions. See *Stroh Corp. v. K & S Development Corp.*, 247

N.W.2d 750 (Iowa 1976); *Landas Fertilizer Company*, supra; *Knudson v. Bland*, 253 Iowa 614, 113 N.W.2d 242; *Cassaday v. DeJarnette*, 251 Iowa 391, 101 N.W.2d 21; *Denniston & Partridge Co. v. Romp*, 244 Iowa 204, 56 N.W.2d 601. The principles enunciated in those cases were summarized as follows in *Stroh Corp.*, supra, 247 N.W.2d at 752:

"Ordinarily, mere knowledge of or consent to the making of improvements by a lessee does not subject the interest of the lessor to a mechanic's lien. * * * [citing authorities].

"But if the lessor has by express or implied agreement with his lessee contracted for the improvement of his real estate by the latter, it is generally held he has subjected his interest in the realty to the claim of a mechanic's lien for the reasonable value of labor and material furnished. This is particularly true where the lease is so drafted that buildings erected or improvements made become the property of lessor after a comparatively short term, or where the improvement creates an additional value included in computing the sums to be paid as rental. * * * [citing authorities]. In this situation, the lessee is considered to be the agent of the lessor within the meaning of § 572.2, The Code. * * * [citing authorities]."

■ The burden is upon a mechanic's lien claimant to prove either an express contract with or on behalf of the lessor or vendor or else to prove such a state of facts as will give rise to an implied contract with him in order to claim a lien against the lessor's realty. *Cassady v. DeJarnette*, 251 Iowa at 397, 101 N.W.2d at 24.

It must be conceded under this record all contract negotiations for the improvements involved were between plaintiff and KSDL.

In order to establish that First Central had subjected its interest in the realty to the claim of a mechanic's lien for the reasonable value of the material and labor furnished, plaintiff had the initial burden to show by a preponderance of the evidence an agreement, express or implied, between

KSDL and First Central whereby KSDL was required to renovate the subject property.

■ This court has held the terms of section 572.2 have been met where claimant further establishes (1) such improvements made will become the property of the lessor in a comparatively short time, (2) the additions or alterations were in fact substantial, permanent and beneficial to the realty and were so contemplated by the parties to the lease agreement, and (3) that the rental payments reflected the increased value of the property as a result of those improvements. See *Cassady v. DeJarnette,* 251 Iowa at 396–397, 101 N.W.2d at 25; *Knudson v. Bland,* 253 Iowa at 618, 113 N.W.2d at 244.

■ Although not clearly articulated, it would appear plaintiff contends KSDL was bound to undertake the renovation project by an implied agreement between it and First Central. It is our opinion from a de novo review the express provisions of the lease agreement and the preliminary negotiations of the parties thereto clearly demonstrate the lack of merit in plaintiff's contention.

The provisions of the lease agreement, dated March 1, 1973, between KSDL and First Central foreclose any argument that KSDL was bound by the express terms thereof to renovate the subject property. Said document provides in part as follows:

" * * *

"21. Repairs and Alterations. * * * Tenant may make such alterations in and to the leased premises and the buildings thereon as it may deem desirable for its use thereof, * * * provided that if such alterations shall substantially change the basic structure of the building or adversely affect the soundness or value thereof, the prior approval of Landlord shall be obtained before such work is commenced. * * * Landlord agrees herewith, * * * *Tenant is given the right to remodel* the building for purposes of establishing a dinner theatre and night club. *Should Tenant exercise this right* by notification to Landlord, the following matters are agreed to:

"1. Landlord will provide the sum of $55,000.00 to Tenant which will thereby become part of the remodeling fund to be held by Landlord for Tenant.

"2. Tenant will deposit with Landlord, the balance of the sum necessary for said remodeling.

"3. Landlord will disburse such funds upon presentation of proof satisfactory to Landlord that such funds have been expended by Tenant in so remodeling.

"* * *." (Emphasis deleted and supplied).

The above provisions demonstrate KSDL had the option of renovating the theater area. Notwithstanding the clarity of the lease provisions, plaintiff contends inferences from the negotiations of the parties in conjunction with other statements in the lease establish that KSDL was impliedly bound to remodel the subject property.

■ A contract may be express or implied. When the parties manifest their agreement by words the contract is said to be express. When it is manifested by conduct it is said to be implied in fact. Both are true contracts formed by a mutual manifestation of assent by the parties to the same terms of the contract. The differentiation arises from the method of proving the existence thereof. *Newman v. City of Indianola,* 232 N.W.2d 568, 574 (Iowa 1975); *Cassady v. DeJarnette,* supra, 251 Iowa at 397, 101 N.W.2d at 25. See also Calamari and Perillo, The Law of Contracts, section 10.

In addition to the previously quoted lease provisions, testimony concerning the preliminary negotiations between KSDL and First Central and the provisions of the agreement entered into by those entities in anticipation of the ultimate lease arrangement demonstrate that at all times the decision whether to renovate the theater was left to the discretion of KSDL. Harris Magnusson, president of First Central, testified at trial that it was the intent of the parties to leave the matter of renovation

within the discretion of KSDL. Additionally pertinent hereto are the following provisions of the pre-lease agreement between KSDL and First Central:

" * * *

"The Lease shall also provide for the following remodeling provisions: .

"a. Lessee will deposit with Lessor, the sum necessary to consummate the remodeling.

"b. Lessor will loan $55,000 to Lessee which will be a part of such remodeling fund and held by Lessor for Lessee.

"c. Lessor will disburse funds upon presentation of proof satisfactory to Lessor that such funds have been expended by Lessee.

"*Such remodeling shall be at the option of Lessee,* but Lessor need not perform if Lessee does not do so. The rent under the Lease shall not be affected or changed if Lessee fails to exercise its remodeling option.

" * * *." (Emphasis supplied).

In view of our determination that establishment of an express or implied agreement whereby the lessee is contractually bound to improve the lessor's property is a prerequisite to plaintiff's successful assertion of its claim for relief, we conclude plaintiff is not entitled to the relief asked herein since it has failed to sustain its initial burden of proof.

Consequently, we need not consider those factors which we have recognized as meeting the terms of section 572.2 when supported by substantial evidence.

The case is therefore

Affirmed.